UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH R. GREENLEAF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) Case No. 3:14-cv-00051-SMY-SCW |
| | ) |
| | ) |
| ATLAS COPCO COMPRESSORS, LLC, et al., | ) |
| | ) |
| | ) |
| Defendants | ) |

**Memorandum In Support of Defendant John Crane Inc.'s Motion To Limit Trial Testimony of Proffered Expert Witness Dr. Matthew Vuskovich Pursuant to Fed. R. Evid. 104 (a) and 702 (DAUBERT CHALLENGE) (Rule 104(a) Hearing Requested)**

Defendant, John Crane Inc., by and through its attorneys, O'Connell, Tivin, Miller & Burns, and for its Memorandum in Support of its Motion to Limit Trial Testimony of Proffered Expert Witness Dr. Matthew Vuskovich Pursuant to Fed. R. Evid. 104(a) and 702, states as follows:

I. **INTRODUCTION**

In this action, Plaintiff alleges he was exposed to asbestos while serving in the United States Navy. Specifically, the First Amended Complaint ("FAC") alleges the Plaintiff was employed from about 1958 through 1975 in the United States Navy (Doc. 3-1). The FAC further alleges that the Plaintiff was exposed to asbestos fibers from all Defendants' products in the Navy and developed severe asbestosis (Doc. 3-1 at paragraphs 3 and 41).

Plaintiff's expert contradicts the Plaintiff's own doctors who have been treating, and monitoring, the Plaintiff for a myriad of complex medical issues for years. Most asbestos cases differ over the degree of injury, but in this case no one other than the Plaintiff's expert has

1

opined that the Plaintiff has asbestosis or severe asbestosis. In this case, Dr. Vuskovich relied upon incomplete and, in some instances, disregarded information, and opines the Plaintiff has a severe asbestos related injury, where no other medical professional can find any radiological or clinical evidence what so-ever to support his bizarre conclusions.

Plaintiff retained Dr. Matthew Vuskovich, who opined that: (1) the Plaintiff had asbestosis, (2) that Plaintiff's asbestosis was severe and (3) each and every exposure to asbestos caused or contributed to the Plaintiff's asbestosis. Dr. Vuskovich's opinions are set out in his May 9, 2013 report (Exhibit A), his B-Read Report (Exhibit B) and Plaintiff's Rule 26 report (Exhibit C). Dr. Vuskovich gave his deposition in this case on October 27, 2014 (Exhibit D-1 Vuskovich Vol. 1) and March 19, 2015 (Exhibit D-2 Vuskovich Vol. 2). In his Rule 26 Report, Dr. Vuskovich stated as follows:

> As stated above, asbestosis is a cumulative dust disease. For this reason, even if Mr. Greenleaf was exposed to asbestos from the ambient air, from other products, or even at home, his exposure to asbestos from Defendants' products was still a cause, in part, of his asbestosis. (Ex. C at page 5).

The Plaintiff smoked at least two packs of cigarettes per day from 1958 through 1988 (Exhibit A at page 1). He began smoking at age 17 (Id.). He is 74 years of age (Id.). He is five feet six inches tall and weighs in excess of 270 lbs. (Id.).

What Dr. Vuskovich, may not have known, is that the Plaintiff had an extensive medical history including but not limited to: coronary artery disease, two coronary artery bypass procedures (1998 & 200), an infarction or heat attack in 2013, stent placement in 2012, atrial fibrillation, bladder cancer, congestive heart failure, a history of pulmonary embolism, bladder cancer, hypertension, hyperlipidemia, diabetes, diabetic retinopathy, peripheral vascular disease, cellulitis, obstructive sleep apnea and a markedly reduced ejection fraction ranging from 20-43%. He has had numerous hospitalizations and emergency room visits for chest pain and

shortness of breath that resolve with treatment (Exhibit E, the report of Dr. Mark Utell, at page 1).

## II. ARGUMENT

This Court should exercise its gatekeeping role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993) and its progeny and exclude Dr. Vuskovich's opinions and testimony that (1) the Plaintiff had asbestosis, (2) that the Plaintiff had severe asbestosis and (3) that each and every exposure caused or contributed to Plaintiff's alleged asbestosis for the following reasons: (1) Dr. Vuskovich is not qualified to render such opinions, (2) these opinions are not based upon sufficient facts or data and (3) Dr. Vuskovich's opinions are scientifically unsupported, unreliable, and based solely on studies and other sources that fail to fit the facts of this case.

### A. Dr. Vuskovich is not qualified to render the proffered opinions.

Dr. Vuskovich is not qualified to testify as to the complex and unique scientific issues presented in an asbestos injury case. Under the *Daubert* framework, the district court is tasked with determining whether a given expert is qualified to testify in the case in question and whether his testimony is scientifically reliable. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). ''Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.'' *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir.1990).

The Seventh Circuit has found that "simply because a doctor has a medical degree does not make him qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). However, the question that the Court must ask is not whether an expert witness is qualified in general, but whether his qualifications "provide a foundation for [him] to answer a

3

specific question.'' *Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir.1994); *see also Meridia Prod. Liab. Litig. v. Abbott Lab.,* 447 F.3d 861, 868 (6th Cir. 2006).

Dr. Vuskovich graduated medical school in 1969. He began one year of orthopedic surgery, after which he left the program (Ex. D at 7:21-23). He worked for one year performing employee physicals (Id. 8:11-19). Dr. Vuskovich passed his B-Read exam on the third attempt in 1990 (Id. at 10:23). Since the 1980's, most of his work has involved black lung evaluations for litigation (Id. at 11:9-23). In 1998, he returned to the University of South Florida to complete his Master of Science in Public Health (Id. at 13:6-11). Dr. Vuskovich has been reviewing asbestos cases for plaintiffs' law firms since 2006 (Id. at 15:7-9). There are no indications that he has ever been qualified as an expert in asbestos medicine or that he has ever testified in court as to an asbestos disease. **Dr. Vuskovich is not a radiologist (Id. at 12:7), a pulmonologist** (Id. at 12:9-10), an industrial hygienist (Id. at 100:1), or a pathologist (Id. at 100:8).

As a B-Reader, he may be qualified to review x-ray films for the radiological abnormalities. However, his ultimate diagnosis of asbestosis involves each of the above specialties. Look to Dr. Lagasto's B-Read (Exhibit B-2). Dr. Lagasto uses the official B-Read form (Id.). Nowhere on the official B-Read screening form is there a space for the screener to opine that the test subject has asbestosis (Ex. B-2). Contrast that with Vuskovich's form, which is not a standard B-Read form and you see where he has created his own section which attributes all abnormalities, both pleural and parenchymal, to asbestos (Exhibit B-1). Dr. Vuskovich exceeds the parameters of the B-Read.

Dr. Vuskovich provides the sweeping general conclusion that secondary exposure contributed to the Plaintiff's injuries without knowing the Plaintiff's secondary exposure to asbestos. Furthermore, he cannot recall any articles he studied as to secondary exposure and asbestosis, nor is he current with literature regarding asbestos medicine (Exhibit D-1, tat 158:12-14). Dr. Vuskovich has never published any articles on the topic of asbestos (Id. at 22:17-20). He

4

has written only one article for publication, which was published in order to complete his Master's degree (Id. at 22:21-23).

### 1. Dr. Vuskovich is not qualified as an expert industrial hygienist.

Dr. Vuskovich is not an industrial hygienist (Ex. D-1 at 100:1). Furthermore, he did not rely upon any industrial hygienist's report in this case (Id. at 196:9-11). In fact, his report and testimony directly contradict the reliance materials of Plaintiff's retained Industrial Hygienist, Jerome Spears.[1] Dr. Vuskovich opines that each and every fiber, even ambient air, can cause or contribute to asbestosis. However, Mr. Spears cites as reliance materials the 1972 report issued by the National Institute for Occupation Safety and Health (1972) (Exhibit F), which provides:

> The National Institute for Occupational Safety and Health (NIOSH) recommends that workers exposed to asbestos dust in the work place be controlled by requiring compliance with the following sections. Control of worker exposure to the limits stated **will prevent asbestosis** and more adequately guard against asbestos induced neoplasms (Id. at page I-1). . . Occupational exposure shall be controlled so the no worked shall be exposed to 2.0 asbestos fibers per cubic centimeter (cc) of air base on count of fibers greater than 5 micrometers (> 5µm) in length….determined as a time-weighted average (TWA) exposure for an 8-hour work day and no peak concentrations of asbestos to which worked are exposed shall exceed 10.0 fibers /cc > 5µm as determined by minim sampling time of fifteen minutes. (emphasis added)

Dr. Vuskovich's conclusion that each and every fiber including asbestos in the ambient air, caused or contributed to the Plaintiff's injuries directly contradicts generally accepted scientific theory dating back to the 1970s as stated above. It further demonstrates his lack of specific knowledge as to science as it relates directly to asbestos. Further examples include: Dr. Vuskovich was asked about types of commercially available asbestos (Ex. D-1 at 81:24-82:6). He said the names of asbestos "mean nothing" to him (Id. at 81-82). When asked to explain the differences between types of asbestos, he attempted to answer, but conceded, "[y]ou know, I don't know." (Id. at 82:7-12).

---

[1] On page 27 of Jerome Spear's report in this case, he cites to the NIOSH (1972), *Criteria for a Recommended Standard: Occupational Exposure to Asbestos.* Washington, D.C. and NIOSH (1976), *Revised Recommended Asbestos Standard.* Washington, D.C.: U.S. Government Printing Office. The permissible exposure level ("PEL") in 1972 was 2.0 f/cc, and it has since been reduced to 0.1 f/cc.

### 2. Dr. Vuskovich is not qualified as an expert pathologist.

There is no known lung tissue available in this case. This issue is not ripe in this case, but in other cases where Dr. Vuskovich has opined, his opinions contradict the finding of actual pathologist and again demonstrates his lack of knowledge or his unreliability (See BELL USCD No. 3:13-CV-1338-SMY-SCW Doc. 244 & 245).

**Dr. Vuskovich's testimony is not sufficiently reliable to be admitted as evidence**

In determining the reliability of proposed expert testimony, courts consider: (1) whether the scientific theory can be or has been tested, (2) whether the theory has been subjected to peer review and publication, and (3) whether the theory has been generally accepted in the scientific community. Fed. R. Evid. 702.

The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion. *Smith v. Ford Motor Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). The district court has latitude in determining not only how to measure the reliability of the proposed expert testimony, but also whether the testimony is, in fact, reliable. *Jenkins v. Bartlett,* 487 F.3d 482, 489 (7th Cir.2007). However, the court must provide more than just conclusory statements of admissibility or inadmissibility to show that it adequately performed its gatekeeping function. *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 608 (7th Cir. 2006).

### a. Dr. Vuskovich's opinions are based on insufficient materials.

At Dr. Vuskovich's deposition, his file consisted of his May 9, 2014 report (Exhibit A to his deposition), his B-Read Report (Exhibit B-1), and Plaintiff's Rule 26 report (Exhibit C to his deposition) (Ex. D-1 at p. 160:10). He was unable to produce any of these reliance materials at his deposition (Id. at 161- 163). Plaintiff cannot identify any school of medical thought that recognizes his single x-ray review to specifically diagnosis asbestosis. No one other medical professional was able to reproduce his findings of parenchymal pneumoconiosis or pleural

6

abnormalities, let alone asbestosis or severe asbestosis as indicated in his B-Read (Ex. B-1 at box 2B section C 2/2) or as alleged in Plaintiff's FAC (Doc. 3-1).

Despite his reports in this case and five other cases that stated he reviewed depositions and interrogatories, Dr. Vuskovich admitted that he actually did not read any depositions or discovery responses (Id. at 250-251). Dr. Vuskovich also conceded that his reports said he reviewed medical records when it should read that he reviewed a singular medical record (Id. at 181:7-11).

> Q: All right. Mr. Greenleaf. Doctor, very specifically, I'm not interested in your reports. I want to know what you were provided in terms of documents about Mr. Greenleaf. What were you provided about Mr. Greenleaf?
> A: I was -- I just had his x-ray. That's what I had, his x-ray.

(Exhibit D-1 Deposition of Dr. Vuskovich Vol. 1 at page 169, line 1-8).

Dr. Vuskovich is unfamiliar with the studies of the leading authorities in asbestos medicine (Id. at130:24-131:1). He is unable to cite any studies that support his hypothesis (Id. at 133:15-134:14). He misidentified one of the most common asbestos criteria, the Helsinki Criteria (Id. at 152:22). He repeatedly demonstrates he is unfamiliar with the epidemiological and medical science as it related directly to asbestos (Id. at 153: 4-8).

**Dr. Vuskovich's opinion that the Plaintiff's had asbestosis is not reliable.**

Asbestosis is the interstitial pneumonitis and fibrosis caused by the inhalation of asbestos (Exhibit F, the ATS Criteria at page 697). Asbestosis is a particular type of scar tissue specifically caused by asbestos. Dr. Vuskovich is the sole source of the opinion that the Plaintiff had asbestosis.[2] None of the Plaintiff's known treating physicians diagnosed him with asbestosis. Dr. Vuskovich was unaware of, and therefore could not refute, the findings of the actual radiologist who reviewed the Plaintiff's radiology reports and did not find any indications of an

---

[2] **Pneumoconiosis is a scarring of the lung tissue. Asbestosis is one of many types of scarring of the lung (Exhibit G).**

7

asbestos-related disease, let alone asbestosis or severe asbestosis. Plaintiff is unable to identify any school of medicine that a diagnosis of asbestosis can be obtained from a single x-ray.

Dr. Vuskovich cannot read CT scans, because, as he admitted at his deposition, he is not qualified or trained to read CT scans and cannot hold himself out as a radiologist (Id. at 126-127).

**Not one medical professional has been able to reproduce Dr. Vuskovich's radiological diagnosis of asbestosis.**

SEE -TABLE 1- Comparison of Dr. Vuskovich's findings with other medical professionals

| Date of Radiology | Reviewer | Pneumoconiosis | Plueral Plaques | Asbestosis |
|---|---|---|---|---|
| Nov. 9, 2011 | Dr. Vuskovich (Ex. B-1) | YES | YES | YES |
| Feb. 23, 2009 | Dr. Wolcott *  (Ex. H) | No | No | No |
| June 22, 2009 | Dr. Rodriquez *  (Ex. I) | No | No | No |
| June 23, 2009 | Dr. Chung * (Ex. J) | No | No | No |
| Jan. 8, 2011 | Dr. Liljebald * (Ex. K) | No | No | No |
| Jan. 9, 2011 | Dr. Hinshaw *  (Ex. L) | No | No | No |
| **April 12, 2011 (CT)** | **Dr. McDonald * Ex. M** | **No** | **No** | **No** |
| Feb. 10, 2012 | Dr. Tidwell *  (Ex. N) | No | No | No |
| Feb. 12, 2012 | Dr. Koerper*   (Ex. O) | No | No | No |
| Feb. 13, 2012 | Dr. Koerper * (Ex. P) | No | No | No |
| May 20, 2013 | Dr. Liljebald* (Ex. Q) | No | No | No |
| Aug. 11, 2013 | Dr. Liljebald * (Ex. R) | No | No | No |
| **April 12, 2011 (CT)** | **Dr. Crapo  (Ex. S)** | **No** | **No** | **No** |
| **May 3, 2013  (CT)** | **Dr. Crapo** | **No** | **No** | **No** |
| Feb. 23, 2009 | Dr. Crapo | No | No | No |
| June 22, 2009 | Dr. Crapo | No | No | No |
| Nov. 19, 2009 | Dr. Crapo | No | No | No |
| Feb. 10, 2012 | Dr. Crapo | No | No | No |
| Feb. 12, 2012 | Dr. Crapo | No | No | No |
| Feb. 13, 2012 | Dr. Crapo | No | No | No |
| Feb. 16, 2012 | Dr. Crapo | No | No | No |
| Feb. 18,  2012 | Dr. Crapo | No | No | No |
| April 8, 2013 | Dr. Crapo | No | No | No |
| May 20, 2013 | Dr. Crapo | No | No | No |
| June 25, 2013 | Dr. Crapo | No | No | No |
| Aug. 11, 2013 | Dr. Crapo | No | No | No |
| Nov. 28, 2013 | Dr. Crapo | No | No | No |
| April, 8, 2013 | Dr. Legasto   (Ex. B-2) | No | No | No |
| **April 12, 2011 (CT)** | **Dr. Utell  (Ex.  E)** | **No** | **No** | **No** |
| **May 3, 2013  (CT)** | **Dr. Utell** | **No** | **No** | **No** |
| Feb. 23, 2009 | Dr. Utell | No | No | No |
| Jan. 8, 2011 | Dr. Utell | No | No | No |
| Feb. 10, 2012 | Dr. Utell | No | No | No |
| Feb. 12, 2012 | Dr. Utell | No | No | No |
| Feb. 13, 2012 | Dr. Utell | No | No | No |
| Feb. 16, 2012 | Dr. Utell | No | No | No |
| Feb. 18,  2012 | Dr. Utell | No | No | No |
| May 20, 2013 | Dr. Utell | No | No | No |
| June 25, 2013 | Dr. Utell | No | No | No |
| Aug. 11, 2013 | Dr. Utell | No | No | No |
| Nov. 28, 2013 | Dr. Utell | No | No | NO |
| Feb. 23, 2009 | Dr. Lagasto (Ex. B-3) | No | No | No |
| June 22, 2009 | Dr. Lagasto | No | No | No |
| June 23, 2009 | Dr. Lagasto | No | No | No |
| Jan. 8, 2011 | Dr. Lagasto | No | No | No |
| Jan. 9, 2011 | Dr. Lagasto | No | No | No |
| **April 12, 2011(CT)** | **Dr. Lagasto** | **No** | **No** | **No** |
| Feb. 10, 2012 | Dr. Lagasto | No | No | No |

| Feb. 12, 2012 | Dr. Lagasto | No | No | No |
| --- | --- | --- | --- | --- |
| Feb. 13, 2012 | Dr. Lagasto | No | No | No |
| Feb. 16, 2012 | Dr. Lagasto | No | No | No |
| **May 20, 2013 (CT)** | **Dr. Lagasto** | **No** | **No** | **No** |
| June 25, 2013 | Dr. Lagasto | No | No | No |
| Augu. 11, 2013 | Dr. Lagasto | No | No | No |
| Nov. 28, 2013 | Dr. Lagasto | No | No | No |
| Feb. 7, 2014 | Dr. Lagasto | No | No | No |
| May 7, 2014 | Dr. Lagasto | No | No | No |

*Treating Radiologist, ** Dr. Crapo is a Pulmonologist and retained expert for John Crane. ***Dr. Lagasto is a B-Reader and Radiologist for co-defendants, *** Dr. Peter Barrett Radiologist and NIOSH B-Reader, but will not testify at trial and his results are not included, Dr. Utell is a Pulmonologist retained by co-defendants in this case. CT = Computer Tomograpy (See  Exhibit G at 696)

Another anomaly found in Dr. Vuskovich's findings is that he issued identical B-Read Reports in two cases (Charles Neureuther 3:13-CV-1327 and Richard Greenleaf 3:14-cv-00051-SMY –SCW). However, in both cases, no other medical witness could reproduce Dr. Vuskovich's findings.

In both instances, Dr. Vuskovich found parenchyma abnormalities consistent with pneumoconiosis (Exhibit D-1 at 314:4-6), they had identical opacities, in identical locations, and identical profusions of  2/2 [severe] (Id. at lines 7-13), identical pleural abnormalities consistent with pneumoconiosis (Id. 18-20), identical pleural plaques at identical sites and identical size (Id. at 315:9-11), neither had a pleural thickening (Id. 16-17), and identical conclusions that they both had "Bilateral Pleural Plaques/Pleural Thickening and Bilateral Parenchymal changes characteristic of the radiographic diagnosis of asbestos pleural disease and asbestosis." (Id. at 315: 22 – 316:2, see also Exhibits B-1 and B-2). When confronted with this anomaly, Dr. Vuskovich was unable to produce any of the radiology upon which he relied to reach his conclusion (Ex. D-1 at 316:18-22).

In fact when Mr. Neureuther reported to his physician, Dr. Shannon Kenny, that he had asbestosis, she had Dr. William Berry conduct a radiological examination of Plaintiff Neureuther's chest and he did not find any pneumoconiosis, pleural plaques or asbestosis (Exhibit  U).  Dr. William Berry, a radiologist, reached an opposite conclusion than Dr. Vuskovich.  Dr. Berry's conclusions were consistent with several other radiologists and defendants' experts.

9

| Date of Radiology | Reviewer | Pneumoconiosis | Pleural Plaques | Asbestosis |
|---|---|---|---|---|
| Nov. 20, 2009 | Dr. Vuskovich (Ex. V-1) | YES | YES | YES |
| **May 14, 2010 (CT)** | **Dr. Hirt (Ex. V-2)*** | **No** | **No** | **No** |
| Nov. 20, 2009 | Dr. Hirt (Ex. V-3) * | No | No | No |
| **March 10, 2007 (CT)** | **Dr. Hirt (Ex. V-3) *** | **No** | **No** | **No** |
| Dec. 10, 2009 | Dr. Vihlen (Ex. V-4) * | No | No | No |
| Feb. 26, 2013 | Dr. Berry (Ex. U) * | No | No | No |
| Dec. 10, 2009 | Dr. Lagasto (Ex. V-5) | No | No | No |
| Dec. 11, 2009 | Dr. Lagasto (Ex. V-5) | No | No | No |
| Feb. 26, 2013 | Dr. Lagasto (Ex. V5 &6) | No | No | No |
| Dec. 10, 2009 | Dr. Utell (Ex. V-7) | No | No | No |
| Dec. 11 2009 | Dr. Utell (Ex. V-7) | No | No | No |
| Feb. 26, 2013 | Dr. Utell (Ex. V-7) | No | No | No |

Dr. Crapo has been substituted for Dr. Barrett in this case. Dr. Barrett will not be available for trial. However, Dr. Barrett's findings are not reported above. * Dr. Hirt, Dr. Vihlen and Dr. Berry are the Plaintiff's treating radiologists.

Dr. Vuskovich was unable to identify a particular protocol he used for the B-reading interpretation he did of x-rays for any of the five Plaintiff's he reviewed for the Vinson law firm, including this Plaintiff (Ex. D at 170:24-171:18). He holds the film to a view box and subjectively compares the film to a standard film (Id. at 31:11-14). However, as stated above, his single x-ray review exceeds the scope of a B-Read.

Dr. Vuskovich cited the America Thoracic Society's Criteria (ATS Criteria) (Exhibit F) as the basis for his opinion that the Plaintiff had asbestosis. The American Thoracic Society (ATS) issued a statement for the diagnosis and initial management of nonmalignant disease related to asbestos (Id.). In 1986, the ATS convened a group of experts to review the literature and to present an authoritative consensus view on the current knowledge as to the nonmalignant disease related to asbestos. The report was completed in 2004 and reported in the American Journal of Respiratory Critical Care Medicine (Id.).

The ATS classified asbestosis, pleural thickening or pleural fibrosis, benign pleural effusion, and airflow obstruction as nonmalignant asbestos related diseases. Dr. Vuskovich cited the ATS Criteria, but eventually **admitted that the ATS criteria, upon which he based his diagnosis of asbestosis, is not intended for research epidemiological study or specifically for litigation** (Ex. D at 100:12-20).

Additionally, **he did not follow the ATS Criteria he cited** as the basis for his opinion that the Plaintiff had asbestosis. The ATS Criteria is as follows: (1) evidence of pathology consistent with asbestos related disease as documented by imaging or histology (in other words

10

radiology, a CT scan or an x-ray) as reviewed by a radiologist or pathology as reviewed by a pathologist, (2) evidence of causation by asbestos as documented by the **occupational and environmental history**, markers of exposure, recovered asbestos bodies or other means, and (3) **"[e]***xclusion of alternative plausible causes for the findings***."** (Exhibit F, ATS at page 691) (emphasis added). According to the ATS Criteria:

> [I]t is essential to take a comprehensive occupational and environmental history when asbestos related disease is suspected. The occupational history should emphasize occupational and environmental exposures that occurred more about 15 years or more before presentation. The diagnosis of asbestosis is ideally based upon an accurate exposure history obtained whenever possible directly from the patient that defines the duration, intensity, time of onset and setting of the patients.

(Exhibit F, at 694). Dr. Vuskovich did not exclude alternative causes for his findings. He did not review any other potential pulmonary irritants or toxins (Exhibit D-1 at 170:1523). Dr. Vuskovich, prior to reading x-rays for asbestosis screenings, is told the individual on the x-ray was exposed to asbestos and is "under the assumption that the person has had exposure to asbestos. . ." (Ex. D at 36:2-7). He is typically called on the phone by the Plaintiff's attorney or a secretary prior to his review of films and told the subject's age and occupation (Id. at 41:4-9). He holds the film to a view box and subjectively compares the film to a standard film (Id. at 31:11-14). Since Dr. Vuskovich's review of a single x-ray, no one has been able to reproduce his results.

NO ONE CAN REPRODUCE DR. VUSKOVICH'S PULMONARY FUNCTION RESULTS.

Dr. Vuskovich did not rely upon pulmonary function testing to arrive at his conclusion that the Plaintiff had asbestosis. In fact at the time of his first deposition in October 2014, he had not seen the Plaintiff's pulmonary function test (Exhibit D1 at page 304:1-4). However, after defendants disclosed their expert reports and, at great cost of time and treasure, procured additional radiology films including CT scans and medical records, Dr. Vuskovich opined that in

11

addition to the radiology findings, which no other medical professional can reproduce, his finding of severe asbestosis were supported by the Plaintiff's pulmonary function test. He conceded the Plaintiff is obese (Ex D-2 at 164:15-24). Between the October 2014 deposition and March 19, 2014, Dr. Vuskovich reviewed a pulmonary function test dated March 3, 2011 (hereinafter Exhibit W-1 PFT of 3.3.11) (Ex D 2 at 164:7-9). Dr. Vuskovich opined that based upon the March 3, 2011 pulmonary function test, the Plaintiff did not have COPD (Exhibit D-2 at 165:8-24). However Dr. Vuskovich was unaware of a second Pulmonary function test of April 16, 2013 (hereinafter Exhibit W -2 PFT 4.16.13) (Ex. D-2 at 166:1-6). The results of that test show a marked improvement in the Plaintiff's total lung volume (from 60.5 % of the predicted value in 2011 up to **81.8%** of the predicted value in 2013) (Exhibit E the report of Dr. Utell) and PFT of April 16, 2013 (Ex. E). The 2013, PFT lung volume was within normal lung volume ranges for the Plaintiff. Dr. Vuskovich conceded that a total lung capacity of **80** % of the predicted value, when adjusted for height, would preclude a diagnosis of restrictive lung disease (Exhibit D-2 at 168:13-19).

    **b. Dr. Vuskovich relies on the "each and every fiber" theory, which is not accepted in the scientific or legal community.**

Dr. Vuskovich's opinion is that each and every exposure the Plaintiff had above background level contributed to the causation of his asbestosis and his lung cancer (Ex. D at 194:19-24). The theory that "each and every exposure" or that each and every "above background," "special," or "occupational" exposure to asbestos alleged to have been sustained by the Plaintiff, or any other individual, contributed to cause Plaintiff's alleged injuries is not accepted in the scientific or legal community. Such opinions are both legally and scientifically invalid, and as such, they are not admissible. Both state and federal courts have excluded the each and every fiber theory. Most recently the United States District Court for the Northern District of Illinois excluded the "each and every fiber" theory (*Krik v. Crane Co.*, Case: 1:10-cv-07435 Doc. No. 314, Filed 12/22/14).

12

Dr. Vuskovich opines that the Plaintiff's exposures should be considered collectively (Ex. D at 195:13-16). He concedes that he did not evaluate any specific defendant or products in this case (Id. at 195:17-20). He also concedes that he did not attempt to quantify the Plaintiff's cumulative exposure from all sources in terms of fiber years (Id. at 195-196) or quantify any single source or defendant (Id. at 196:5-8). He did not rely on any industrial hygienist report (Id. at 196:9-11).

Dr. Vuskovich advanced the Vuskovich Theory that each and every non-trivial exposure caused or contributed to Plaintiff's asbestos injury. Vuskovich's theories are not capable of being tested, have never been subject to peer review, the rate of error is unknown, and the theory has not been accepted in the relevant community. In fact, it has been rejected in the Northern District of Illinois (*Krik,* USDC NDIL ED Case No. 10-cv-7435) and the 6th Circuit Court of Appeals (*Lindstrom v. A-C Product Liability Trust,* 424 F3d 488, 493 (6th Cir., 2005). The exclusion of the each and every fiber theory is discussed below.

John Crane made asbestos and non-asbestos packing. However, for the products that did contain asbestos, Plaintiff's expert devised a theory that "each and every exposure to asbestos" caused or contributed to the Plaintiff's injuries. Plaintiff's expert testimony regarding "each and every exposure" opinions comes from a necessity to place liability on a defendant such as John Crane, which used chrysotile asbestos in its products—namely packing. Even when John Crane used chrysotile asbestos in its products, the fibers were encapsulated and incorporated into the gaskets and packing as part of the finished product. Illinois courts have held that there is a difference in the risk of harm associated with different asbestos products. *Leng v. Celotex Corp.*, 196 Ill.App.3d 647, 651, 554 N.E.2d 468, 470 (1st Dist. 1990) (holding that "[A]sbestos products vary drastically as to the risk of harm they present, partially due to the fact that there are six different types of asbestos silicates."); *see also Rutkowski v. Occidental Chemical Corp.*, 1989 WL 32030, 1989 U.S. Dist. LEXIS 1731, 2-3 (N.D. Ill. Feb. 16, 1989). This is especially true

13

with encapsulated asbestos fibers, such as the ones John Crane used in its gaskets and packing. *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1145 (5th Cir. Tex. 1985) (holding "…all asbestos-containing products cannot be lumped together in determining their dangerousness. Proof that those asbestos insulation products are dangerous or defective does not satisfy the burden of proving that products used for other purposes, such as asbestos textiles with encapsulated asbestos fibers, are dangerous.") (emphasis omitted).

To date, there have been no epidemiological studies which outline the risks posed by work with chrysotile products like gaskets and packing. Indeed, most scientific studies of the potential fiber release of gaskets and packing show any such release to be minimal.[3] Experts must admit that not all asbestos exposures are capable of causing disease, as virtually all people who live in urban, modernized areas are exposed to low levels of asbestos in the ambient air.

If a jury were to hear evidence that each and every exposure to a toxic substance is harmful, they would be confronted by a theory that runs counter to established science and to legal standards; the distinctions between types of asbestos Illinois courts have noted in *Leng* and *Rutkowski* would not be necessary if, as Plaintiff's experts suggest, each and every exposure is causal; then each and every exposure would be equally to blame for Plaintiff's condition. Causation in a products liability case is not as simple as this, however, and so the "each and every exposure" theory should not be allowed in this case.

---

[3] Copies of the gasket and packing studies performed and published by Fred Boelter and Carl Mangold, Fred W. Boelter, et al, *Airborne Fiber Exposure Assessment of Dry Asbestos-Containing Gaskets and Packings Found in Intact Industrial and Maritime Fittings*, 63 AM. INDUS. HYGIENE ASS'N J. 732 (2002) ("Boelter") (Exhibit X-1); Carl Mangold, et al, *An Exposure Study of Bystanders and Workers During the Installation and Removal of Asbestos Gaskets and Packing*, 3 J. OCCUPATIONAL & ENVTL. HYGIENE 87 (2006) ("Mangold ") (Exhibit X-2) are attached.

After studying gaskets and packing extensively under various working conditions, Mangold concluded, "The data from the samples collected during all activities associated with asbestos gasket and packing work indicate that the asbestos fibers released during these activities are considerably lower than the current 8-hour TWA permissible exposure limit of 0.1 rice, let alone all previous standards." See Mangold, 97. Boelter similarly concluded that even when manipulated in a completely dry state, asbestos-containing gaskets and packing produce "insignificant" fiber release fiber release "well below the current OSHA PEL of 0.1 f/co as sampled over an 8-hour TWA period." Boelter, 739-40.

In an asbestos case based upon negligence or strict liability, a plaintiff must prove two things: that they were exposed to a defendant's asbestos-containing product, and that such exposure was the cause in fact of the injury. *See Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill.App.3d 669, 673, 672 N.E.2d 885, 888 (3d Dist. 1996). The Illinois Supreme Court has stated that there are two ways for a plaintiff to prove cause in fact: first, a plaintiff may prove that their condition would not have occurred "but for" a defendant's conduct, or, secondly, that the defendant's conduct is a "substantial factor" in the causation of a plaintiff's condition. *Thacker v. UNR Industries, Inc.*, 151 Ill.2d 343, 356, 603 N.E.2d 449, 455 (Ill., 1992).

However, a plaintiff **cannot** argue "that so long as there is any evidence that the injured worker was exposed to defendant's asbestos-containing product there is sufficient evidence of cause in fact to allow the issue of legal causation to go to the jury." *Nolan v. Weil-McLain*, 233 Ill.3d 416, 434, 910 N.E.2d 549, 559 (Ill. 2009). If a plaintiff were allowed to bring in evidence, as suggested by the "each and every exposure" theory, that each exposure equates to causation, it would undercut the entire foundation laid down by *Thacker* and *Nolan*. Further, under *Thacker*, a plaintiff must prove that he or she came into contact with a defendant's product with a frequency, regularity, and proximity sufficient to satisfy the causation requirement. 151 Ill.2d at 359, 603 N.E.2d at 457. This test requires more from a plaintiff than just a casual or minimal exposure to a defendant's asbestos-containing product. If a plaintiff were allowed to argue that one breath for less than one second was a contributing factor to the cause of his or her asbestos-related disease, then there would be no need for two out of the three *Thacker* requirements: frequency and regularity. One breath is not "frequent" exposure; one breath is not "regular" exposure. If this court were to allow the theory that each breath contributed to plaintiff's condition, then two thirds of the *Thacker* requirement would be rendered obsolete.

15

### B. Dr. Vuskovich's testimony conflicts with federal case law.

The United States District Court for the Northern District of Illinois recently conducted a Daubert analysis on the each and every fiber theory and excluded it at trial. It found that Plaintiff's experts cannot conclude that, because they cannot rule out that a single dose of asbestos causes injury, any and all exposure to asbestos is necessarily harmful. *Krik* at 8. The Northern District found this "not an acceptable approach for a causation expert to take." (Id.) It also concluded that the theory was inadmissible because of plaintiff's experts' "wholesale failure to base their opinions on facts specific to this case." (Id. at 9). The court considered the following in their analysis: experts' failure to provide information regarding plaintiff's amount of exposure to asbestos or to consider any such information in their analysis; expert's analysis of plaintiff's medical records and work history without a quantification of plaintiff's exposure to asbestos-containing products; experts' generalized citations to scientific literature; expert's inability to identify a peer-reviewed scientific journal that adopted the theory or to cite any medical studies that set forth a known rate of error (Id. at 10). Dr. Vuskovich's opinions are similarly not based in facts specific to this case.

Other courts have similarly found that the "each and every exposure" theory would conflict with well-established jurisprudence on causation. For example, the Sixth Circuit held that an affidavit based on the "each and every exposure" theory was inadequate for a plaintiff to overcome a motion for summary judgment where no specific defendant's product had been named. *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 493 (6th Cir., 2005). If a court were to accept such a theory as each and every fiber causes or contributes to an asbestos injury, the court reasoned that "the Sixth Circuit's 'substantial factor' test would be meaningless." (Id.) and that it "would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion." (Id.) *See also Gregg v. V-J Auto Parts, Inc.*, 943 A.2d 216, 226 (Pa., 2007) (holding that generalized opinions "attesting that any

16

exposure to asbestos, no matter how minimal, is a substantial contributing factor in asbestos disease" "do not suffice to create a jury question in a case where exposure to the defendant's product is de minimums.").

If a jury were to hear testimony concerning the "each and every exposure" theory, it would be confused when presented with the legal standard required in Illinois under *Thacker* and other cases. The theory, as presented by plaintiff's experts, offers a shortcut around complex issues of causation mandated by Illinois cases and federal cases as discussed below. Given the option, a jury would likely strive to accept an "easy answer" to this issue, while disregarding the more complex, but legally necessary, issues of frequency, regularity and proximity. Thus, to allow such an expert opinion would be to cause undue jury confusion, and even prejudice, against John Crane.

The applicable standard in evaluating the "each and every exposure" theory in federal court comes from the case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2794 (1993). That case formulated standards for evaluating whether an expert's testimony presents a scientifically valid theory, namely that such testimony must rest on a reliable foundation and be relevant to the task at hand (*See* Id.). Courts can look to several factors to determine scientific validity, such as testing, peer-review and publication, error rate, controls, and acceptance in the relative scientific community (*See* Id. at 593-94).

In light of the strict requirements set forth in *Daubert*, this Court should not accept the conclusions put forth by Dr. Vuskovich. He did not undertake critical analysis of Plaintiff's various exposures to asbestos. His report did not discuss any exposures to particular products, nor do they set out any methodology or analysis used. His opinions are sweeping conclusion that the cumulative exposures Plaintiff had to asbestos, from any and all products, containing any and all fiber types, would have contributed to his developing asbestosis. Missing from the doctor's analysis are discussions about the types of products the Plaintiff might have come into contact

17

with, the dose-level of any such exposures, or even the fiber types contained within the products themselves, or the fiber release, if any, for each individual product. In short, there is no scientific basis for his conclusion that "each and every exposure" contributed to Plaintiff's condition. Plaintiff cannot identify any school of medical thought that recognizes his review of a single x-ray to diagnosis asbestosis and no one other medical professional arrived at the same conclusion or was able to reproduce his findings. Absent the basis for such opinions, the court should exclude his testimony pursuant to *Daubert*.

Other courts have also come to the conclusion that the "each and every" exposure theory does not find support in medical literature. The Northern District Court of Ohio held that "the opinion…that every breath [Plaintiff] took which contained asbestos could have been a substantial factor in causing his disease, is not supported by the medical literature." *Bartel v. John Crane, Inc.*, 316 F.Supp.2d 603, 611 (N.D. Ohio, 2004). The case of *Georgia-Pacific Corp. v. Stephens*, 239 S.W.3d 304, 321 (Tex. App., 2007) held that the "experts failed to show . . . that the 'any exposure' theory is generally accepted in the scientific community — that any exposure to a product that contains asbestos results in a statistically significant increase in the risk of developing mesothelioma" and also stated that more than "some non de minimus occupational exposure must occur to increase one's risk of developing the disease."(Id). *See also Smith v. Kelly-Moore Paint Co.*, 307 S.W. 3d. 829, 834 (Tex. App., 2010) (reaffirming the *Stephens* holding as applied to mesothelioma, not only asbestosis). Furthermore, the "each and every exposure" theory conflicts with a basic principle of scientific study, namely that the "dose makes the poison." *In re W.R. Grace & Co.,* 355 B.R. 462, 476 (Bankr. Del., 2006). General toxicological principles hold that the greater the dose of a person's exposure to toxins, the greater the severity of a person's response to those toxins (Id.) (citing Federal Judicial Center, *Reference Manual on Scientific Evidence* 475 (2d ed.2000)).

Numerous cases have held that the theory that Plaintiff's experts intend to expound has not been tested, peer-reviewed, or gained general acceptance as required under *Daubert*, and thus the court should bar any testimony from Dr. Vuskovich regarding the "each and every fiber" theory. Therefore, because of the doubt surrounding the conduct, formulation and general lack of scientific acceptance surrounding the "each and every exposure" theory, it cannot be held to have satisfied the *Daubert* factors, and as that case acts as a "gatekeeper" for scientific evidence, the court should exclude the "each and every exposure" theory.

Given the entirety of Dr. Vuskovich's report and testimony, it is clear they lack the hallmarks of scientifically reliability. For the reasons set forth above, John Crane hereby requests that this Court grant its Motion in Limine to exclude (1) Dr. Vuskovich's diagnosis of asbestosis and (2) his "each and every exposure" opinion. Such opinions are neither legally nor scientifically valid, and they could confuse or mislead the jury when it is instructed on causation.

John Crane Inc. adopts and incorporates the above arguments to its motion to bar Jerome Spears from opining that each and every fiber theory and joins co-defendant's motion to exclude Jerome Spears from offering testimony as to "each and every fiber" or any similar testimony.

WHEREFORE, John Crane respectfully requests that the Court exclude any evidence or argument stating or suggesting the Vuskovich conclusion that the Plaintiff had an asbestos related disease, including but not limited to asbestosis; and that each and every exposure to asbestos contributed to cause the Plaintiff's asbestosis, or any other opinion that is substantially similar and any other relief this Court deems just.

Date April 7, 2015

        Respectfully submitted,
        O'Connell, Tivin, Miller & Burns LLC

        /S/Sean P. Fergus
        Sean P. Fergus
        On Behalf of John Crane Inc.

Daniel J. O'Connell
Sean P. Fergus
Carly Olson
O'Connell, Tivin, Miller & Burns LLC
135 S. LaSalle St. Ste. 2300
Chicago, Illinois 60603
(312) 256-8800
(312) 256-8808 Fax
sean@otmblaw.com

I, Sean P. Fergus, do hereby certify that on April 7, 2015, I electronically filed the foregoing documents listed above memorandum and attached exhibits with the United States District Court for the Southern District of Illinois via the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/_Sean P. Fergus_____