IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENNETH R. GREENLEAF** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No. 14-CV-51-SMY-SCW |
| | ) |
| **ATLAS COPCO COMPRESSORS, LLC,** | ) |
| et al., | ) |
| | ) |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendant John Crane, Inc. (Doc. 181). For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

Plaintiff Kenneth Greenleaf filed this action alleging he sustained injuries as a result of exposure to asbestos-containing products attributable to John Crane and various other defendants (*see* Doc. 3-1). More specifically, Plaintiff alleges he contracted bilateral pulmonary asbestosis as a result of inhaling airborne asbestos fibers while serving aboard United States Navy ships as an enlisted officer between 1957 and 1980 (Doc. 3-1; Doc. 234-4).

Plaintiff served aboard the USS Roosevelt ("Roosevelt") as a fireman and helper to machinist mates from 1958 until 1962 (Doc. 234-1, pp. 41-43). From 1963 until 1969, Plaintiff served aboard the USS Ault (*Id.* at p. 47). In 1969, Plaintiff was stationed on the USS Tweedy and USS Ingraham (*Id.* at pp. 48-50). In 1970, Plaintiff was promoted to Chief Petty Officer (*Id.* at p. 51). From 1974 until 1976, Plaintiff was assigned to staff duty in DESRON 22 where he served as the engineer representative for the squadron and rode on numerous ships (*Id.* at pp. 53-54). In 1976, Plaintiff was assigned to the USS Donald B. Beary and served as the Senior Chief of Command in the engineering

1

department (Doc. 234-1, p. 57).  From 1978 until 1980, Plaintiff served aboard the USS Henry B. Wilson ("Wilson"), where he spent half of each day on watch in the engine room (*Id*. at pp. 58-60).

As a machinist mate helper on the Roosevelt, Plaintiff was responsible for taking apart machinery and repairing it as required (Doc. 234-1, pp. 293).  He used John Crane packing material impregnated with graphite wire for high-pressure steam valves (Doc. 234-1, pp. 85-87, p. 145).  Plaintiff removed old packing by using a packing puller tool or the end of a welding rod to dig out the packing (*Id*. at pp. 201-202).  The process was dusty and Plaintiff was in close proximity to the pump or valve while removing the old packing material (*Id*.; *see also* Doc. 234-2, ¶ 5).  Plaintiff recalled the method he used to install new packing, which required measuring and cutting pieces with a pen knife (Doc. 234-1, p. 200).  Plaintiff removed packing on a monthly basis (*Id*. at pp. 336-337).

## ANALYSIS

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). *See also RuffinThompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.,* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* As the Seventh Circuit has noted, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the

events." *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

## Applicable Law

As an initial matter, the Court must determine what law governs this lawsuit: Illinois or maritime law. John Crane asserts that maritime law applies because Plaintiff's alleged exposure to its products occurred while he was onboard the Roosevelt. Plaintiff does not dispute the applicability of maritime law. Rather, Plaintiff contends there is no conflict between Illinois law and maritime law because the outcome is the same – John Crane is not entitled to summary judgment.

Normally, federal courts apply the choice of law rules of the forum state to determine what substantive law governs an action. *See Various Plaintiffs v. Various Defendants ("Oil Field Cases"),* 673 F.Supp.2d 358, 362–63 (E.D.Pa.2009). If the case sounds in admiralty, however, it would be inappropriate to apply Illinois law instead of federal admiralty law. *See* 28 U.S.C. § 1333(1). Therefore, "[t]he initial step in the choice of law analysis is to determine whether this case "sounds in admiralty." *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 131 (3rd Cir. 2002). Whether maritime law is applicable is a threshold issue that is a question of federal law governed by the law of the circuit in which the district court sits. *Conner v. Alfa Laval, Inc.,* 799 F.Supp.2d 455, 460 (E.D.Pa.2011) (citing U.S.C.A. Const. Art. III, § 2; 28 U.S.C. § 1333(1); *In re Asbestos Prods. Liab. Litig.* (*Oil Field Cases*), 673 F.Supp.2d 358, 362 (E.D.Pa.2009)).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce [.]" Second, a

court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (internal citations omitted).

The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury is caused by a vessel on navigable waters. *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. The locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters. *See Conner,* 799 F.Supp.2d at 466. "In assessing whether work was on 'navigable waters' (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters." *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). Here, Plaintiff's alleged exposure to asbestos occurred exclusively during his naval service from 1957 until 1980. Specifically, Plaintiff alleges asbestos exposure from his work in the engineering spaces on various vessels. This work occurred while the vessels traveled navigable waters as well as while the ships were dry-docked. Thus, the locality test is met.

The connection test requires that "the type of incident involved has a potentially disruptive impact on maritime commerce and that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (quoting *Sisson,* 497 U.S. at 364, 365 & n. 2, 110 S.Ct. 2892). If an allegedly defective product was produced for use on a naval vessel, an ensuing tort inflicted on a sea-based service member working on that vessel is governed by maritime law. *See Quirin v. Lorillard Tobacco Co.,* 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014). The Court finds that the products at issue were essential for the proper functioning of ships and bear a substantial relationship to traditional maritime activity. Therefore, the connection test is also satisfied. Accordingly, maritime law is applicable to Plaintiff's claims against this Defendant.

**Causation**

In determining whether a defendant is liable under maritime law for injuries caused by asbestos used in its products, a plaintiff must establish causation. *See Lindstrom v. A–C Prod. Liab. Trust,* 424 F.3d 488, 492 (6th Cir.2005). Causation is established under maritime law by showing that (1) the plaintiff was exposed to the defendant's product and (2) the product was a substantial factor in causing the plaintiff's injury. *See Conner,* 842 F. Supp. 2d at 797. There must be evidence of more than a "minimal contact" or "minimal exposure" to the defendant's product. *Lindstrom,* 424 F.3d at 492. A plaintiff may raise a genuine issue of material fact by presenting direct evidence that he worked on or near the asbestos-containing components of specific products. *Cabasug v. Crane Co.,* 989 F. Supp. 2d 1027, 1037-38 (D. Haw. 2013). A plaintiff may also present circumstantial evidence of exposure; evidence regarding the prevalence of a defendant's product, combined with evidence of a plaintiff's regular duties, may support the reasonable inference that a plaintiff worked on a particular product. *Id.*; *see also Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992). A plaintiff does not have to present direct evidence that he recalled working on a particular product by the defendant or recall the particular vessel upon which it was installed. *Id.*

John Crane argues summary judgment is appropriate because Plaintiff cannot establish as a matter of law that: (1) he was ever exposed to an asbestos-containing product of John Crane; (2) his medical condition was caused by exposure to John Crane products; and (3) John Crane owed him a duty. The Court disagrees. Plaintiff testified that he used John Crane packing aboard the Roosevelt. More specifically, he testified that he changed John Crane asbestos packing on valves and pumps. Plaintiff specifically recalled the packaging of the packing material and described the removal process as dusty. Further, Plaintiff testified to working with John Crane packing throughout his twenty-two year career with the Navy.

Here, the record contains sufficient evidence to create a genuine issue of material fact. When viewing the facts in the light most favorable to Plaintiff, a jury could reasonably conclude that

Plaintiff was exposed to John Crane asbestos-containing products while performing his duties in the Navy. Accordingly, summary judgment is denied.

    **IT IS SO ORDERED.**

    **DATED:  September 25, 2015**

                                                  **s/ Staci M. Yandle**
                                                  **STACI M. YANDLE**
                                                  **United States District Judge**