IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH R. GREENLEAF | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-51-SMY-SCW |
| | ) |
| ATLAS COPCO COMPRESSORS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendant General Electric Company ("GE") (Doc. 190). For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

Plaintiff Kenneth Greenleaf filed this action alleging he sustained injuries as a result of exposure to asbestos-containing products attributable to John Crane and various other defendants (*see* Doc. 3-1). More specifically, Plaintiff alleges he contracted bilateral pulmonary asbestosis as a result of inhaling airborne asbestos fibers while serving aboard United States Navy ships as an enlisted sailor between 1957 and 1980 (Doc. 3-1; Doc. 236-4).

Plaintiff served aboard the USS Roosevelt ("Roosevelt") as a fireman and helper to machinist mates from 1958 until 1962 (Doc. 236-1, pp. 41-43). From 1963 until 1969, Plaintiff served aboard the USS Ault (*Id.* at p. 47). In 1969, Plaintiff was stationed on the USS Tweedy and USS Ingraham (*Id*. at pp. 48-50). In 1970, Plaintiff was promoted to Chief Petty Officer (*Id*. at p. 51). From 1974 until 1976, Plaintiff was assigned to staff duty in DESRON 22 where he served as the engineer representative for the squadron and rode on numerous ships (*Id*. at pp. 53-54). In 1976, Plaintiff was

1

assigned to the USS Donald B. Beary and served as the Senior Chief of Command in the engineering department (Doc. 236-1, p. 57). From 1978 until 1980, Plaintiff served aboard the USS Henry B. Wilson ("Wilson"), where he spent half of each day on watch in the engine room (*Id*. at pp. 58-60).

As a fireman apprentice on the Roosevelt, Plaintiff worked in the engine and boiler rooms (Doc. 236-1, pp. 43-44). On several other vessels, Plaintiff worked in the engineering spaces (Doc. 236-1, pp. 96-97, pp. 99-100). The temperature in the engineering spaces was between 120 and 140 degrees Fahrenheit (Doc. 236-3, p. 151). The machinery required asbestos insulation to enable the men to work in the space and to prevent individuals from getting burned (*Id*. at pp. 153-154).

The Roosevelt had four engine rooms, four generating rooms, four pump rooms, twelve boiler rooms, and a couple of auxiliary spaces (*Id*. at p. 74). On the Roosevelt, Plaintiff was assigned to the No. 1 engine group, where there was a high and low pressure turbine, oil pumps, condensate pumps, a main condenser and the reduction gears (*Id*. at pp. 74-75). Plaintiff was assigned to the Roosevelt during overhauls (*Id.* at p. 41, p. 69). The overhaul process included insulation tear-outs (Id. at pp. 293-294). This was a dusty process and Plaintiff was responsible for cleaning up following the insulation tear-outs (*Id*.). The main turbine on the Roosevelt was manufactured by GE (*Id*. at p. 75). Plaintiff was present during the maintenance of the turbine – including the removal of insulation (*Id.* at p. 290). The old insulation was cut off with a hacksaw (Doc. 236-1, pp. 282-284; Doc. 236-3, p. 128). The asbestos-containing gaskets were then scraped or wire brushed off the flanges of the machinery (*Id*.). The lagging was made of diatomaceous earth with asbestos and asbestos cloth over the top of it (*Id*. at pp. 290-291). Plaintiff breathed in the dust (*Id.*; *see also* Doc. 236-5, pp. 121-123).

Plaintiff was never warned of the dangers of asbestos in the manufacturer manuals provided (Doc. 236-1, p. 301). The Military Specification ("MilSpec") governing Navy turbines called for "heat insulation and lagging" (Doc. 190-6, ¶ 4). GE turbines manufactured for the Navy did not

have any heat insulation materials installed on them at the time they left GE's control (*Id*.). The heat insulation was applied at some point afterwards (*Id*.). GE was not involved in the process of supplying and installing heat insulation materials (*Id*.). Plaintiff testified that he witnessed GE employees working on the turbines aboard the Roosevelt (Doc. 236-1, p. 299). Another witness also testified to observing GE employees on the Roosevelt (Doc. 236-4, pp. 155-156).

## ANALYSIS

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). *See also RuffinThompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.,* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* As the Seventh Circuit has noted, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

**Applicable Law**

As an initial matter, the Court must determine what law governs this lawsuit: Illinois or maritime law. GE asserts that maritime law applies because Plaintiff's alleged exposure to its products occurred while he was onboard the Roosevelt. Plaintiff does not dispute the applicability of maritime law. Rather, Plaintiff contends there is no conflict between Illinois law and maritime law because the outcome is the same – GE is not entitled to summary judgment.

Normally, federal courts apply the choice of law rules of the forum state to determine what substantive law governs an action. *See Various Plaintiffs v. Various Defendants ("Oil Field Cases"),* 673 F.Supp.2d 358, 362–63 (E.D.Pa.2009). If the case sounds in admiralty, however, it would be inappropriate to apply Illinois law instead of federal admiralty law. *See* 28 U.S.C. § 1333(1). Therefore, "[t]he initial step in the choice of law analysis is to determine whether this case "sounds in admiralty." *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 131 (3rd Cir. 2002). Whether maritime law is applicable is a threshold issue that is a question of federal law governed by the law of the circuit in which the district court sits. *Conner v. Alfa Laval, Inc.,* 799 F.Supp.2d 455, 460 (E.D.Pa.2011) (citing U.S.C.A. Const. Art. III, § 2; 28 U.S.C. § 1333(1); *In re Asbestos Prods. Liab. Litig.* (*Oil Field Cases*), 673 F.Supp.2d 358, 362 (E.D.Pa.2009)).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce [.]" Second, a court must determine whether "the general character" of the

> "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (internal citations omitted).

The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury is caused by a vessel on navigable waters. *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. The locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters. *See Conner,* 799 F.Supp.2d at 466. "In assessing whether work was on 'navigable waters' (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters." *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). Here, Plaintiff's alleged exposure to asbestos occurred exclusively during his naval service from 1957 until 1980. Specifically, Plaintiff alleges asbestos exposure from his work in the engineering spaces on various vessels. This work occurred while the vessels traveled navigable waters as well as while the ships were dry-docked. Thus, the locality test is met.

The connection test requires that "the type of incident involved has a potentially disruptive impact on maritime commerce and that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (quoting *Sisson,* 497 U.S. at 364, 365 & n. 2, 110 S.Ct. 2892). If an allegedly defective product was produced for use on a naval vessel, an ensuing tort inflicted on a sea-based service member working on that vessel is governed by maritime law. *See Quirin v. Lorillard Tobacco Co.,* 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014). The Court finds that the products at issue were essential for the proper functioning of ships and bear a substantial relationship to traditional maritime activity. Therefore, the connection test is also satisfied. Accordingly, maritime law is applicable to Plaintiff's claims against this Defendant.

**Causation**

In determining whether a defendant is liable under maritime law for injuries caused by asbestos used in its products, a plaintiff must establish causation. *See Lindstrom v. A–C Prod. Liab. Trust,* 424 F.3d 488, 492 (6th Cir.2005). Causation is established under maritime law by showing that (1) the plaintiff was exposed to the defendant's product and (2) the product was a substantial factor in causing the plaintiff's injury. *See Conner,* 842 F. Supp. 2d at 797. There must be evidence of more than a "minimal contact" or "minimal exposure" to the defendant's product. *Lindstrom,* 424 F.3d at 492. A plaintiff may raise a genuine issue of material fact by presenting direct evidence that he worked on or near the asbestos-containing components of specific products. *Cabasug v. Crane Co.,* 989 F. Supp. 2d 1027, 1037-38 (D. Haw. 2013). A plaintiff may also present circumstantial evidence of exposure; evidence regarding the prevalence of a defendant's product, combined with evidence of a plaintiff's regular duties, may support the reasonable inference that a plaintiff worked on a particular product. *Id*.; *see also Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992). A plaintiff does not have to present direct evidence that he recalled working on a particular product by the defendant or recall the particular vessel upon which it was installed. *Id*.

GE argues that there is insufficient evidence that Plaintiff ever worked on or around GE turbines or equipment. The Court disagrees. Plaintiff, as well as several fact witnesses, testified that GE turbines were aboard the Roosevelt. Plaintiff was around during the removal of asbestos insulation from the GE turbine. Plaintiff was also present when the asbestos-containing casing was removed from the turbine. The removal of the old insulation was a dusty process which required the sweep up of the dust. Thus, there is sufficient circumstantial evidence of asbestos exposure to avoid summary judgment.

**Duty to Warn**

GE asserts that it is not liable for injuries caused by products it neither manufactured nor distributed and that GE sold "bare metal" steam turbines to the Navy for installation aboard the Roosevelt. This is sometimes referred to as the "bare metal defense." *See Quirin*, 17 F.Supp.3d at 769-770. In *Quirin*, the Northern District of Illinois noted:

> In general, consistent with the bare metal defense, a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.

*Quirin,* 17 F. Supp. 3d at 769-70. The *Quirin* court denied summary judgment to the defendant, finding the record contained sufficient evidence for a reasonable jury to conclude that the defendant's valves required asbestos-containing components to function in the high heat applications for which they were marketed. On those facts, the court reasoned that a duty to warn of foreseeable risks could attach.

In this case, GE asserts that, to the extent any heat insulation material was later applied to its turbines, GE was not involved with that process. Plaintiff, on the other hand, points to evidence indicating that GE turbines required asbestos-containing components to function properly in the high-heat applications for which they were supplied and that GE was aware of this fact. The temperature in the engineering spaces where Plaintiff worked was between 120 and 140 degrees Fahrenheit. Asbestos insulation enabled the men to work in the engineering space and to prevent them from being burned. Plaintiff's witnesses testified that manuals for the machinery specified the utilization of insulation. GE admits that the MilSpecs called for heat

insulation. Further, there is testimony that GE employees worked on the GE turbines aboard the Roosevelt.

Like the *Quirin* court, this Court is not convinced that a manufacturer should avoid liability on a failure to warn theory where it designed its products to be used with asbestos-containing materials. A jury could certainly conclude it was foreseeable that the product would subject those working with it to the possible hazards of asbestos exposure. Accordingly, summary judgment is denied.

**IT IS SO ORDERED.**

**DATED: September 25, 2015**

                  **s/ Staci M. Yandle**
                  **STACI M. YANDLE**
                  **United States District Judge**